PER CURIAM.
The appellants were the plaintiffs below, who instituted a class action on behalf of all those property owners similarly situated by virtue of owning land which abuts a sanitary sewer line extension. Their suit for relief arose because of certain objections they posed to the completed construction by the City of North Miami, appellee here, of a sanitary sewer improvement project and the special assessment liens the city levied to recover the cost of the project.
For purposes of this opinion, the following facts will suffice: (a) on November 24, 1964, pursuant to the provisions of § 184.04 Fla.Stat. F.S.A. (1963), the City of North Miami adopted its resolution No. 1075, creating sanitary sewer improvement project No. 1553. The purpose of this resolution was to extend an existing sewer line one block, which would thereby cause the new sewer line to abut the plaintiffs’ property, (b) In the resolution, the City Engineer was directed to prepare plans, specifications, and cost estimates in compliance with Ch. 184, supra, for the furtherance of the project; (c) subsequently, the City Tax Assessor prepared a preliminary assessment roll, on the basis of front footage abutting the sewage project, in accord with § 184.05(7), supra; (d) a second assessment roll was prepared by the City Tax Assessor thereafter, which provided for assessment based upon square footage rather than the prior existing apportionment of the project’s cost on a front footage basis; (e) special assessment liens were levied by the city against each of the appellants in order to recover their proportionate shares based upon their properties’ square footage.
In this appeal, the appellants strenuously set forth several theories of law, upon which they contend that the liens should be forever discharged and that the entire class of property owners should be relieved from paying any of the cost of the sewage project. These legal attacks relate to the initiating resolution which authorized the sewage improvement project; the conformity to Chapter 184, supra, by the City of North Miami; the apportionment of costs between the municipality and property owners, pursuant to § 184.05(2) (b); and finally, to the change from assessment of costs on a front footage basis to a square footage basis.
Our first judicial examination of the relevant factors in this case centers upon the cost basis which provided the total sum for which the appellants are being assessed. The record contains an “estimate for assessment” which lists the various components necessary for the construction of the *107 sewage project. Included therein is Item Number 18, described as a “lift station”, which is the equivalent of a “pumping station”, the cost of which is $40,000.00. Our attention has been directed by the appellants to § 184.05(7) (c) (2) and (3) Fla. Stat. F.S.A., which in pertinent part provide as follows:
“(2). To abutting property shall be apportioned, all or any part of the cost of the sewer improvement as may be fixed by resolution ordering the sewer improvement not including therein, however, the cost of laterals, pumping station or outlet, such assessments to be made according to frontage or such other method which the governing body of the municipality shall deem equitable under the circumstances, and
“(3). To the municipality shall be apportioned the remaining cost of the sewer improvement, unless the municipality by resolution has apportioned all of the cost of such sewer improvement to the abutting property as provided in subsection (2); * * *”
It appears to this court that the assessment of the cost of the pumping station against the abutting property owners was prohibited by the above statutory authority. The Legislature has made a clear delineation of those improvements which are so special as to be paid for by the benefitting property owners, and those which benefit the public in general so as to be borne by the municipality. Certainly, the above language shows that the pumping station falls into the latter category. See Abrams v. City of Hollywood, Fla.App.1958, 105 So. 2d 602.
Further examination of the method of assessment used by the city to apportion costs of the sewage improvement project indicates that the change from front footage to square footage, as shown by the exhibits admitted into evidence, was arbitrary and unreasonable. It appears that the city acted without authority when it adopted a second standard for the special assessments placed upon the appellants’ property. See Carr v. Kissimmee, 80 Fla. 754, 86 So. 701; § 184.05(7) (a) supra. Therefore, based on the two reasons given above, we must remand this case to the trial court with instructions to require the municipality to reassess the abutting property owners for their proportionate share of the sewage project, first adjusting the cost basis by deducting the cost of the pumping station from the total price, and then apportioning the remaining cost to the property owners on the basis of their front footage which abuts the project.
With regard to the other points raised by the appellants, we find the most concise answer to be contained in 29-A Fla.Jur. Sewers § 31:
“In levying a special assessment for sewer improvements, a municipality should follow the procedures outlined in the governing statute or special act. However, irregularities in carrying out specific acts do not render such acts invalid or void, so long as constitutional guarantees are not denied. There must be a notice to the property owner, at a time before the assessment becomes final for the assessment to create a binding obligation.”
The record amply indicates that notice was given to the entire class of appellants, and further, that none of them availed themselves of the ten day time limitation period, following the confirmation of the first assessment roll, to voice objections or bring appropriate legal action. § 184.05(5) and (9), supra. The wisdom of this specific time limitation becomes quite obvious when one considers the enormous expense and planning necessary for this type of public improvement. When this lawsuit was brought almost two years after the proposal for the sanitary sewer improvement, the project had been long completed and financing arrangements and commitments had been settled. On the other hand, when appropriate legal action is *108 brought within the time provided by the statute, a municipality has the option of seeking a judicial determination of the project’s propriety, or finding alternate means of financing and construction. There is no claim by the class of appellants that the municipality attempted to defraud them,- or attempted to utilize any fraudulent, misrepresentative, or improper procedures. The principle of estoppel is generally applied to situations such as this, and the point was well made in the case of Rosche v. City of Hollywood, Fla.1952, 55 So.2d 909 wherein the court adopted the chancellor’s ruling, which contained this statement:
“The defendant city also contends that plaintiffs are estopped to maintain this action for the cancellation of the special assessments for the improvements on these streets. This point, in my opinion, is well taken. Plaintiffs had direct notice of the ordinances providing for street improvements; they saw the pavement being put down and were well aware that part, or all of the costs thereof, would have probably been assessed against their properties. They stood idly by when they could have filed their protests with the City Commission, or could have resorted to a Court of Equity or restrain the paving of the streets, and the levying of the assessments thereon. They remained silent for two years after the City became liable for the cost of paving of the streets and did nothing. Having failed to avail themselves of any of thé remedies provided for their protection under the laws of Florida, and hot having shown fraud or bad faith, on the part of 'the City Commissioners in making the assessment, they should now be held to be estopped to do so.”
See also City of Miami v. Ganger, Fla. 1957, 101 So.2d 116; Moody v. City of Vero Beach, Fla.App. 1967, 203 So.2d 345.
Thus, for the reasons given above, the final judgment appealed is hereby reversed and remanded to the trial court with instructions to order the municipality to reassess the appellants in accord with the views expressed herein.